[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-12603
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 29, 2012
JOHN LEY
CLERK

D.C. Docket No. 6:09-cv-01406-MSS-GJK

6:09-cv-01406

DARRALYN C. COUNCIL,

Plaintiff-Appellant,

versus

AMERICAN FEDERATION OF GOVERNMENT
EMPLOYEES (AFGE) UNION, et al.,

Defendants,

SECRETARY, DEPARTMENT OF VETERANS AFFAIRS,
UNITED STATES OF AMERICA,

Defendants-Appellees.

_____

6:09-cv-01921

DARRALYN C. COUNCIL

Plaintiff-Appellant,

versus

SECRETARY, DEPARTMENT OF VETERANS AFFAIRS,

Defendant-Appellee,

TIMOTHY LIEZERT, et al.,

Defendants.

_____

6:10-cv-00931

DARRALYN C. COUNCIL,

Plaintiff-Appellant,

versus

UNITED STATES OF AMERICA,
SECRETARY, DEPARTMENT OF VETERANS AFFAIRS,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(May 29, 2012)

Before BARKETT, PRYOR and FAY, Circuit Judges.

PER CURIAM:

2

Darralyn C. Council, proceeding *pro se*, appeals following the entry of final judgment in favor of his former employer, the United States Department of Veterans Affairs ("the VA"), on his discrimination and retaliation claims under Title VII, 42 U.S.C. § 2000e-16(a). For the reasons set forth below, we affirm.

## I. Facts

Council, a black male, filed several Title VII suits against the VA based on events that occurred while he was employed at its medical centers in Houston, Texas, and Orlando, Florida.[1] Although he raised numerous claims against the VA, only three are relevant to this appeal.[2] First, he alleged that the VA engaged in retaliation by improperly demoting him while he was in Houston. His second and third claims, respectively, alleged gender discrimination and retaliation in connection with the VA's termination of his employment in Orlando.

The VA denied liability, and moved for summary judgment following discovery. Evidence that the VA submitted in support of this motion showed that

---

[1] The district court later consolidated these cases.

[2] We hold that Council's remaining claims, as well as his claims against other defendants, are abandoned due to his failure to challenge their disposition in his initial appellate brief. *Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008) ("While we read briefs filed by *pro se* litigants liberally, issues not briefed on appeal by a pro se litigant are deemed abandoned.") (citation omitted). To the extent we construe his brief to challenge to the disposition of any other claims, they are supported by arguments raised for the first time on appeal, which we likewise decline to consider. *Albra v. Advan, Inc.*, 490 F.3d 826, 828 n.1 (11th Cir. 2007) (holding that a *pro se* litigant waived arguments that he did not pursue before the district court).

3

Council began working at its medical center in Houston in 2006 as an intern in the Technical Career Field ("TCF") program, which trained candidates to effectively manage a prosthetics service. Angela Bishop, the chief of the VA's Prosthetics Service in Houston and a white female, was Council's supervisor. She proposed removing him from the TCF program in April 2007, and his removal became effective on May 3, 2007.

Council complained to the VA's Equal Employment Opportunity office ("EEO") alleging race discrimination, gender discrimination, and retaliation following his removal from the TCF program and accompanying demotion. At one point, he mailed certain documents to a VA attorney in connection with the administrative complaint which contained "patient identifiable information," including names and social security numbers.

Council subsequently transferred to a VA medical center in Orlando. However, the VA attorney in Houston informed Timothy Liezert, the director of that center, about Council's possession of documents containing this sensitive information, which led to an investigation and, according to the VA, Council's ultimate termination.

In the meantime, Council filed a second complaint with EEO officials, this time concerning his employment in Orlando. He alleged gender discrimination

and retaliation in relation to the denial of a promotion; the receipt of a disciplinary letter; and the refusal to transfer him. An administrative law judge ("ALJ") denied Council's March 2008 EEO claims. In doing so, the ALJ observed that Council did not contest his termination, choosing instead to pursue that dispute before the Merit Systems Protection Board ("MSPB").

Council did in fact contest his termination with the MSPB, but an administrative law judge ("ALJ") upheld that decision as well. The ALJ, summarizing Council's claims, observed that he alleged "that he was subjected to discrimination based upon race, and that the VA's action was taken in retaliation for his prior EEO activity," and did not reference gender in denying these claims.

The district court granted summary judgment to the VA in part, but denied it in part. The court found that issues of material fact existed with respect to Council's retaliatory demotion claim. Turning to Council's employment in Orlando, the court found that Council failed to exhaust his claim that the VA terminated him as a result of gender discrimination because the termination-related claims he raised before the MSPB concerned only race discrimination and retaliation. The court did not expressly address whether Council's retaliatory firing claim was unexhausted, but it did find that claim to be without merit. In sum, in relevant part, the court denied the VA's motion for summary judgment on

5

Council's race retaliatory demotion claim, but granted summary judgment to the VA on his other claims.

Council's retaliatory demotion claim proceeded to a jury trial in May 2011. During his case-in-chief, Council introduced a letter from VA officials articulating seven grounds for removing him from the TCF program and demoting him to the position of purchasing agent: (1) improperly delegating to Prosthetics Service administrative staff an assignment that he was instructed to perform personally; (2) "inappropriately authoriz[ing] the installation of unapproved software" onto the Houston computer system; (3) failing to appear for a meeting with an instructor to discuss an assignment, or explain that absence; (4) refusing to receive training from the Prosthetics Program Support Assistant, telling her that he "did not need to know anything because [he] would surround [him]self with employees that knew what they were doing"; (5) refusing to be trained by another staff member and making derogatory comments about her; (6) taking unapproved leave; and (7) failing to follow his supervisor's instructions to provide certain information for a human resources request.

Council questioned two witnesses about his termination in Orlando, but the district court reminded him that his trial was only about his demotion in Houston.

It permitted Council to call Orlando witnesses only to show the VA's continued retaliatory intent by trying to affect his termination decision.

Council declined an opportunity to testify on his own behalf. He did, however, call Bishop, who testified that she hired him as a TCF intern in October 2006. She served as a preceptor in the TCF program, and in that capacity, assumed "full responsibility" for his training.

Bishop recalled that, around January 2007, Council asked to be transferred to another location. While the VA's central office was open to a transfer as of February 2007, by March 19, 2007 it had advised Bishop that Council had to be "dropped from the TC program." On April 12, 2007, Bishop sent an official response to Council's request for a transfer in which she acknowledged that he wanted a transfer because he believed he was not in "a conducive learning environment," and advised him that she would "remain actively involved and engaged in the oversight of [his] remaining internship."

Bishop believed that she became aware that Council filed an EEO complaint against her by some point in April. The official reported notification date for his contact with the EEO office was April 23, 2007. Council's removal from the TCF program occurred on May 3, 2007. She denied that there was a relationship between the two events.

7

According to Bishop, the VA's human resources department drafted the May 2007 demotion letter using information that Bishop provided. She believed that the performance-related allegations contained therein were true, and, when asked, explained the incidents that gave rise to these allegations.

On cross-examination, Bishop explained that when Council began his internship in October 2006, work was light due to the holidays, and his performance declined as the work became more difficult.[3] Additionally, when Council found out that he would not be transferred, he "shut down."

Bishop and the VA's central office began contemplating Council's removal prior to April 10, 2007. She sent the April 12 letter so that there was closure on his transfer request, even though she knew that his removal was being contemplated. Although she could not recall the particular date that she learned that Council had filed an EEO complaint, she admitted to commenting that Council "had a history of filing sexual harassment charges" as of April 18, 2007.

Bishop denied ever discussing Council or his behavior with Orlando officials. She also denied that she recommended demoting Council as a result of either his race or his EEO activity.

---

[3] The district court permitted the VA to simultaneously cross-examine Bishop and present its defense case through her.

Thereafter, the parties rested. At that time, Council did not make any motion, pursuant to Fed.R.Civ.P. 50(a), for judgment as a matter of law with respect to his retaliatory demotion claim. The jury ultimately returned a verdict for the VA, and, accordingly, the district court entered judgment in its favor. Council timely filed a notice of appeal.[4]

## II. Analysis

### A. Discriminatory Termination

In his *pro se* brief on appeal, Council argues that the district court erred in granting partial summary judgment to the VA on his claim that the VA terminated him because of his gender. He asserts that he exhausted his administrative remedies with respect to this claim.

Where appropriate, we review a district court's order granting summary judgment *de novo*, viewing the facts in the light most favorable to the non-moving party, and drawing all reasonable inferences in his favor. *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011). Generally, a party moving for summary judgment has the burden of showing that there is no genuine issue of fact. *Burger*

---

[4] Council's notice of appeal incorporated a motion to set aside the verdict on sufficiency-of-the-evidence grounds, which the district court denied. As Council did not separately appeal this ruling, we lack jurisdiction to review it. *See* Fed.R.App.P. 3(c)(1)(B); *cf. Barfield v. Brierton*, 883 F.2d 923, 930 (11th Cir. 1989) (holding that jurisdiction exists over a final judgment and all orders that produced that judgment)

*King Corp. v. E-Z Eating, 41 Corp.*, 572 F.3d 1306, 1313 (2009). If the movant succeeds, the burden shifts to the non-moving party to show that issues of material fact exist. *Id.*

As a prerequisite to a Title VII action, a federal employee must pursue and exhaust his administrative remedies. *Brown v. Snow*, 440 F.3d 1259, 1263 (11th Cir. 2006); 42 U.S.C. § 2000e-16(c) (*cross-referencing* 42 U.S.C. § 2000e-5). To successfully exhaust administrative remedies, the information that a claimant provides to the agency must "enable the agency to determine what complaint of discrimination was made and when it had occurred." *Johnson v. Bergland*, 614 F.2d 415, 418 (5th Cir. 1980). "Each incident of discrimination and each retaliatory adverse employment decision constitutes a *separate actionable* 'unlawful employment practice.'" *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114, 122 S.Ct. 2061, 2073, 153 L.Ed.2d 106 (2002) (emphasis added).

A federal employee with a "mixed case," that is, a case alleging that a federal government agency terminated him as a result of unlawful race or gender discrimination, has the option of raising that issue before the agency's EEO office or the MSPB, but not both simultaneously. 29 C.F.R. § 1614.302(a)-(b); *Chappell v. Chao*, 388 F.3d 1373, 1375 (11th Cir. 2004); *see also* 5 U.S.C. § 7512 (specifying the MSPB's jurisdiction). An employee who chooses to bring a mixed

10

case to the MSPB has three options following the MSPB's disposition of the claims, or lack of disposition within 120 days: (1) appeal the discrimination claim, on its own, to the Equal Employment Opportunity Commission; (2) drop the discrimination claims and appeal the other actions directly to the Federal Circuit; or (3) raise the action in district court. *See* 5 U.S.C. §§ 7702(b)(1), (e)(1)(B); 7703(b). For those who take the third option, "a final decision from the MSPB exhausts an employee's administrative remedies and allows him to seek judicial review." *Chappell*, 388 F.3d at 1375.

Assuming *arguendo* that Council may contest the district court's exhaustion ruling despite his failure to dispute it in response to the VA's motion for summary judgment, *see Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc), the record contradicts Council's assertions. As a federal employee, Council was entitled to raise his claim that the VA terminated him based on gender before either: (1) the VA's EEO office; or (2) the MSPB. *See* 29 C.F.R. § 1614.302(b). According to the VA's evidence, however, his MSPB claims did not allege gender discrimination. Council did not submit any evidence to discharge his burden to rebut this showing. *See Burger King*, 572 F.3d at 1313. Thus, the uncontroverted evidence demonstrated that his proceedings before the

11

MSPB would not entitle him to judicial review of this claim. *See Chappell*, 388 F.3d at 1375.

Similarly, while Council's EEO complaint alleged that gender discrimination motivated a number of the VA's actions against him in Orlando, the ALJ who resolved that complaint's claims explicitly noted that Council did not contest his termination in his EEO complaint. The fact that Council articulated a gender discrimination theory in general did not entitle him to use that theory to challenge different actions in federal court once the EEO office issued its decision. *See Nat'l R.R. Passenger Corp.*, 536 U.S. at 114, 122 S.Ct. at 2073. Because Council did not allege before either the EEO officials or the MSPB that the VA terminated him based on gender, that claim was unexhausted, and the district court properly granted summary judgment to the VA in this respect.

## B. Retaliatory Termination

Council further asserts that the district court improperly found that his retaliatory termination claim was unexhausted because he raised that claim before the MSPB.

Contrary to Council's assertion, the district court's order reflects that it did not resolve this claim on exhaustion grounds, but rather, found it to be without merit. Aside from his exhaustion-based argument, Council raises no other

12

challenge to the district court's entry of summary judgment on this claim. As we cannot consider the merits of the ultimate ruling without constructing arguments for him, he has necessarily failed to demonstrate any entitlement to relief. *See Timson* v. Sampson, 518 F.3d 870, 874 (11th Cir. 2008); *GJR Invs. v. Escambia Cnty., Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998) (holding that the leniency afforded to *pro se* litigants "does not give a court license to . . . rewrite an otherwise deficient pleading in order to sustain an action") (citation omitted). Accordingly, we affirm the entry of summary judgment on Council's retaliatory termination claim without considering its merits.

## C. Retaliatory Demotion

Council's final argument is that the jury verdict in favor of the VA on his retaliatory demotion claim was flawed. He asserts that the VA demoted him merely ten days after his contact with EEO officials, which he asserts was a striking contrast to its April 12, 2007 memorandum notifying him that he would remain in the TCF program. He further asserts that the evidence rebutted the VA's articulated reasons for his demotion, because it showed that he: (i) never installed unapproved software; (ii) performed work assignments adequately; (iii) did not refuse training; and (iv) was never absent without approval. He also maintains that the VA's evidence was either inconsistent or false.

13

We ordinarily review *de novo* the sufficiency of the evidence to support a verdict at a civil trial, inquiring whether, viewing the facts in the light most favorable to the prevailing party, "no legally sufficient evidentiary basis exists for a reasonable jury to find for that party on that issue." *Rossbach v. City of Miami*, 371 F.3d 1354, 1356 (11th Cir. 2004) (quotation omitted); *but see Wilson v. Attaway*, 757 F.2d 1227, 1237 & n.3 (11th Cir. 1985) (holding that, absent a Rule 50(a) motion before the close of all evidence, and irrespective of whether the plaintiff in a civil case subsequently files a post-judgment motion, review of the evidence supporting a verdict will be "limited to whether there was *any* evidence to support the jury's verdict, irrespective of its sufficiency, or whether plain error was noted which, if not noticed, would result in a 'manifest miscarriage of justice'"); *Rand v. Nat'l Fin. Ins. Co.*, 304 F.3d 1049, 1051 (11th Cir. 2002) (observing that in some cases, we have declined altogether to review a challenge to the evidence supporting a jury verdict absent a Rule 50(a) motion prior to the verdict).

Here, we need not decide whether Council can challenge the jury's verdict against him or whether the "any evidence" standard should apply to resolve that issue, because ample evidence supported the jury's verdict in any event.

14

Title VII prohibits employers from retaliating against employees who oppose unlawful employment practices, including racial discrimination. 42 U.S.C. § 2000e-16(a) (extending Title VII protection to federal employees); 29 C.F.R. § 1614.101(b).  An employee bears the burden of proving a Title VII violation by a preponderance of the evidence.  *Burns v. Gadesen State Cmty. Coll.*, 908 F.2d 1512, 1517 (11th Cir. 1990).

When a retaliation claim is fully tried, the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), will cease to apply.  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510-11, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993). But an employer's intent is likely to remain circumstantial.  *US Postal Serv. Bd. of Governors v. Aiken*, 460 U.S. 711, 716, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983).

At trial, a court may give credence to undisputed evidence, but otherwise, credibility determinations, are left to the jury.  *Akouri v. State of Fla. Dep't of Transp.*, 408 F.3d 1338, 1348 (11th Cir. 2005) (declining to disturb a jury's finding that discrimination occurred when the employer's challenge to that finding rested on a manager's denial that he made a discriminatory statement, as this created a credibility issue).  Likewise, the jury's disbelief of the defendant's proffered reasons for taking allegedly retaliatory action may permit it to find that

15

an intentional Title VII violation occurred, but will not necessarily require such a finding. *St. Marys*, 509 U.S. at 511, 113 S.Ct. at 2749. Still, even jury verdicts must be supported by more than a tenuous connection between a materially adverse action and a protected ground. *See Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1181-83 (11th Cir. 2010) (reversing jury verdict on retaliation claims based entirely on "wholly generalized" evidence concerning her reactions with a manager, which occurred months prior to the alleged adverse employment actions); *Sullivan v. Nat'l RR Passenger Corp.*, 170 F.3d 1056, 1061 (11th Cir. 1999) (reversing jury verdict in favor of employee because evidence relating to his qualifications for promotion was too "speculative" to call into question evidence relating to the employer's explanation for promoting someone else).

Here, ample evidence supported the jury's conclusion that Council did not meet his burden to demonstrate by a preponderance of the evidence that the VA engaged in unlawful retaliation by removing him from the TCF program and demoting him. *See Burns*, 9078 F.2d at 1517. To the extent the jury credited the VA's explanations for demoting Council, its decision was well-supported. *See St. Marys*, 509 U.S. at 511, 113 S.Ct. at 2749. Specifically, Bishop testified that she could not recall when she became aware of his EEO charge, and denied demoting him in retaliation for it. Although she commented about Council's "history" of

16

filing sexual harassment claims on April 18, 2007, VA officials had resolved to remove him from the TCF program by at least April 10, 2007, and as early as March 19, 2007. *See Sullivan*, 170 F.3d a 1061. Although Bishop was aware that Council requested a transfer out of Houston at some point in February, the available evidence shows that the reason for his request was simply that Houston was not "a conducive learning environment." Thus, we need not speculate that Bishop was aware prior to April that Council opposed discrimination. *See id*.

Furthermore, Bishop provided detailed explanations as to each of the seven grounds for choosing to demote Council, all of which tended to show that, as the workplace grew busier, Council performance worsened and he adopted an attitude toward others that was both defiant and hostile. Council's evidence relating to the amount of time that had passed between his complaints and demotion could not, without more, overcome these explanations. *See Brown*, 597 F.3d at 1181-83. In large part, the VA made its case through Bishop, who both parties were able to examine in full. The jury, after hearing questioning intended to imply that the grounds upon which the VA based Council's demotion was a cover-up for retaliation, was entitled to believe Bishop's more benign justifications. *See Akouri*, 408 F.3d at 1348. As such, the evidence to support the jury's verdict in favor of the VA not only existed, but existed in abundance.

17

For the foregoing reasons, we affirm the entry of judgment for the VA on Council's Title VII claims.

**AFFIRMED.**