[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-11751
Non-Argument Calendar

_____

D.C. Docket No. 1:10-cv-03269-GGB

BEVERLY GILLIARD,

                                        Plaintiff-Appellant,

versus

GEORGIA DEPARTMENT OF CORRECTIONS,
CHARLES SMITH,
SCOTT POITEVINT,
UTE SHEPHERD,
BECKY EAST,
CINDY SCHWEIGER,

                                        Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(December 7, 2012)

Before DUBINA, Chief Judge, CARNES and BARKETT, Circuit Judges.

PER CURIAM:

    Appellant Beverly Gilliard, appearing pro se, appeals the magistrate judge's

grant of summary judgment to Becky East, Scott Poitevint, Ute Shepherd, Charles Smith, Cindy Schweigler (collectively, "individual defendants"), and the Georgia Department of Corrections ("GDC"), her employer (collectively, "defendants") in her disability-discrimination suit brought under the Americans with Disabilities Act ("ADA"), the Rehabilitation Act ("Rehab Act"), and the Family and Medical Leave Act ("FMLA").[1]  Gilliard sought monetary damages and prospective injunctive relief.

## I.

On appeal, Gilliard argues that she qualified for FMLA leave, she exercised her FMLA rights, she suffered adverse employment actions, namely, a five-percent salary reduction and termination, and there was a causal connection between her exercising her FMLA rights and those adverse actions.  Gilliard argues that, to the extent she took excessive leave, it was due to the defendants' refusal to accommodate her.  Furthermore, Gilliard contends that the defendants violated the FMLA by requiring her to return a certain form completed by her doctor sooner than the 15-day period provided under the FMLA, and that the defendants interfered with her FMLA rights because she received 3 days less than the full 12

---

[1] Both parties consented to jurisdiction by a U.S. Magistrate Judge pursuant to 28 U.S.C. § 636 et seq.

weeks of FMLA leave, as she had sick and annual leave available when she was terminated. Gilliard alleges that Schweiger designated Gilliard's FMLA leave retroactively, in violation of the FMLA. Gilliard also argues that she was denied extended leave after her FMLA leave expired on October 20, 2008, which was unreasonable where she provided a physician's form indicating that she would be disabled until February 1, 2009. Finally, Gilliard argues that, based on the timing between her requests for accommodations, her filing of a charge with the Equal Employment Opportunity Commission ("EEOC"), her use of FMLA leave, and her termination, she produced enough evidence for a reasonable trier of fact to conclude that the defendants' proffered reasons—that she failed to return to work at the expiration of her FMLA leave, she was not satisfactorily performing her duties prior to taking FMLA leave, and her absence would burden other employees—were pretextual.

The defendants respond that Gilliard's FMLA claims against GDC and the individual defendants in their official capacities are barred by Eleventh Amendment immunity. They contend that, with regard to Gilliard's claims for injunctive relief, she applied for Social Security Disability ("SSDI") benefits in a separate proceeding and claimed that she was totally disabled as of August 2008, which would estop her claims for reinstatement or front pay because she was

3

claiming to be unable to work prior to her termination in October 2008.

We review a court's order granting summary judgment *de novo*, "viewing all the evidence, and drawing all reasonable inferences, in favor of the non-moving party." *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 767 (11th Cir. 2005) (per curiam). Summary judgment is only proper if there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. *Id.* "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Brooks v. Cnty. Comm'n of Jefferson Cnty., Ala.*, 446 F.3d 1160, 1162 (11th Cir. 2006). Arguments that are not briefed on appeal are deemed abandoned. *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004).

Under the FMLA, "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period" for "a serious health condition that makes the employee unable to perform the functions of [her] position." 29 U.S.C. § 2612(a)(1)(D). Employers are responsible for designating leave as FMLA-qualifying, and when the employer has enough information to determine whether leave is being taken for a FMLA-qualifying reason, the employer must notify the employee within five business days whether the leave will be designated

4

and counted as FMLA leave. 29 C.F.R. § 825.300(d)(1). An employee is entitled to additional notification if the employer retroactively designates FMLA leave only if the employer does not designate the leave as required by § 825.300. 29 C.F.R. § 825.301(d). The leave provisions of the FMLA are "wholly distinct from the reasonable accommodation obligations of employers covered under the ADA." 29 C.F.R. § 825.702(a) (internal brackets omitted).

We have recognized that the FMLA "creates two types of claims: interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act, and retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the Act." *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1293 (11th Cir. 2006) (internal quotation marks omitted). "To establish an interference claim, an employee need only demonstrate by a preponderance of the evidence that he was entitled to the benefit denied." *Id.* (internal quotation marks omitted).

Where a plaintiff alleges an FMLA retaliation claim without direct evidence of the employer's retaliatory intent, we apply the burden-shifting framework for evaluating discrimination claims under Title VII of the Civil Rights Act of 1964 ("Title VII") established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93

5

S. Ct. 1817 (1973). *Id.* at 1297. To establish a prima facie case of retaliation under that framework, the plaintiff must show that (1) she engaged in statutorily protected conduct; (2) she experienced an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action. *Id.* If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to articulate a legitimate reason for the adverse action. *Id.* If the defendant provides such a reason, the plaintiff must then show that the defendant's proffered reason for the adverse action is pretextual. *Id.* To establish a retaliation claim, the plaintiff also must show that the employer's actions were motivated by an "impermissible retaliatory or discriminatory animus." *Strickland v. Water Works & Sewer Bd. of City of Birmingham*, 239 F.3d 1199, 1207 (11th Cir. 2001). The causation element may be shown by the temporal proximity of the complaints to the adverse employment action, "[b]ut mere temporal proximity, without more, must be 'very close.'" *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (per curiam) (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273, 121 S. Ct. 1508, 1511 (2001). In *Thomas*, we stated that a three-to-four-month disparity between the protected activity and the adverse employment action was not sufficient without other evidence tending to show causation. 506 F.3d at 1364.

6

Pretext means that the reason given by the employer was not the real reason for the adverse employment decision. *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997). "[A] reason cannot be proved to be a 'pretext *for discrimination*' unless it is shown both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515, 113 S. Ct. 2742, 2752 (1993). In this respect, conclusory allegations or unsupported assertions of discrimination, without more, do not raise an inference of pretext where an employer has offered extensive evidence of legitimate, nondiscriminatory reasons for its actions. *Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir. 1996). Instead, the plaintiff "must meet [the proffered] reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc). A plaintiff will withstand summary judgment by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Combs*, 106 F.3d at 1538 (internal quotation marks omitted).

In *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 797, 119 S. Ct. 1597, 1600 (1999), the Supreme Court stated that the pursuit, and receipt, of SSDI

7

benefits, which are provided to persons with disabilities so severe that they are unable to do their previous work and cannot engage in gainful employment, does not automatically estop a recipient from pursuing an ADA claim. We have not addressed whether *Cleveland* applies in the context of a plaintiff's FMLA claims.

As an initial matter, Gilliard does not argue on appeal that the magistrate judge erred in finding that her FMLA claims for monetary relief against GDC and the individual defendants in their official capacities were barred by the Eleventh Amendment, and, thus, she has abandoned those claims. Gilliard's claims for prospective injunctive relief remain, and even if we held that *Cleveland* applied in the context of Gilliard's FMLA claims, an issue we need not reach, she would not be estopped from pursuing her remaining claims, as discussed below.

With regard to Gilliard's FMLA interference claim, any issue of fact was not material because Gilliard did not present more than a scintilla of evidence showing that her 12-week FMLA leave period was reduced by 3 days. To the extent that Gilliard argues that the failure to provide her with extended leave at the conclusion of her FMLA leave denied her of a reasonable accommodation, the reasonable-accommodation requirement under the ADA is distinct from a FMLA interference claim. Moreover, the FMLA did not require GDC to provide more than the 12 weeks of job-protected leave that Gilliard received.

8

With regard to Gilliard's FMLA retaliation claims, assuming, *arguendo*, that she established a prima facie case of retaliation under the FMLA, she did not establish that the legitimate, nondiscriminatory reasons proffered by the defendants for the proposed five-percent salary reduction and her termination were pretexts for retaliation. She did not demonstrate that the proffered reasons were not the "real" reasons for those employment actions, or that the real reasons were discriminatory animus against her.

Finally, Gilliard received notice that her leave was designated as FMLA leave in accordance with § 825.300(d)(1) because she received notice within five business days of East's receipt of the necessary information. Thus, Gilliard's leave was not improperly designated retroactively as FMLA leave. Accordingly, we conclude that the magistrate judge did not err in concluding that the defendants were entitled to summary judgment as to Gilliard's FMLA claims.

## II.

Gilliard argues that she was locked in her supervisor Smith's office, which placed her in a hostile environment, that she filed an internal complaint, and Smith then retaliated against her by writing a Memorandum of Concern ("MOC"). Gilliard argues that she established a prima facie case for disability discrimination under the Rehab Act and the ADA because she is a qualified individual with a

9

disability, she suffered adverse employment actions, including termination and a salary reduction, and she was replaced by a less qualified and non-disabled employee after she was reassigned or demoted.  Gilliard argues that she was impaired under the ADA and Rehab Act based on (1) "stroke level" hypertension, (2) mental illness that affected her ability to concentrate and sleep, (3) spinal arthritis and a bulging disc or sciatica causing chronic back pain, and (4) osteoarthritis that required knee-replacement surgery that affected her ability to walk, stand, and sit.  Gilliard contends that she was denied various reasonable accommodations she requested, including (1) to wear sneakers, (2) an adjusted four-day workweek schedule to attend therapy, (3) an office to accommodate her wheelchair, and (4) a closer parking space that she did not receive until after 30 days.  Gilliard argues that Smith called her a "cripple" and a "hopalong," and the Rehab Act prohibits employers from treating an employee as impaired.  Gilliard argues that, after she filed a charge with the EEOC, Smith retaliated against her by requiring her to sign in and out daily.

Again, we review a district court's order granting summary judgment *de novo*, "viewing all the evidence, and drawing all reasonable inferences, in favor of the non-moving party."  *Vessels*, 408 F.3d at 767.  A mere 'scintilla' of evidence supporting the opposing party's position will not suffice to withstand summary

judgment. *Brooks*, 446 F.3d at 1162. The proper procedure for a plaintiff to assert a new claim is to amend the complaint, and not through argument in a brief opposing summary judgment. *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) (per curiam). We may affirm on any ground that appears in the record, regardless of whether the district court considered or relied upon that ground. *Thomas*, 506 F.3d at 1364.

The ADA provides that no covered employer "shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to . . . discharge of employees" and any of the "terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a) (2007).[2] We evaluate disability-discrimination claims brought under the ADA under the *McDonnell Douglas* framework, under which, the plaintiff must first establish a prima facie case of discrimination. *Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1193 (11th Cir. 2004). To establish a prima facie case of employment discrimination under the ADA, a plaintiff must show that: (1) she has a disability;

---

[2] Congress recently enacted major changes to the ADA by adoption of the Americans with Disabilities Act Amendments Act of 2008 ("ADAAA"), Pub. L. No. 110-325, 122 Stat. 3553 (2008), effective Jan. 1, 2009. All of the conduct alleged in Gilliard's complaint occurred prior to the ADAAA's effective date. In granting the defendants' motion for summary judgment, the magistrate judge applied pre-amendment ADA law. We have not addressed in a published opinion the issue of whether the ADAAA applies retroactively. Because Gilliard does not assert that the magistrate erred by applying the pre-amendment ADA laws, we do not address the ADAAA's potential retroactivity.

11

(2) she is a qualified individual with or without a reasonable accommodation; and (3) she was discriminated against because of her disability.  *Rossbach v. City of Miami*, 371 F.3d 1354, 1356–57 (11th Cir. 2004) (per curiam).  Claims brought under the Rehab Act are analyzed under the same framework as the ADA, and, thus, need not be addressed separately.  *Cash v. Smith*, 231 F.3d 1301, 1305 (11th Cir. 2000).

The pre-amendment ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."  42 U.S.C. § 12102(2) (2008).  To prove that she is disabled due to an impairment, a plaintiff must prove that the impairment, as personally suffered by her in that particular case, substantially limits a major life activity.  *Pritchard v. Southern Co. Servs.*, 92 F.3d 1130, 1132 & n.3 (11th Cir. 1996) (citing 29 C.F.R. § 1630.2(j)).  A major life activity can be, inter alia, working and walking.  29 C.F.R. § 1630.2(i) (2008); *see Rossbach*, 371 F.3d at 1357 (listing major life activities).

The pre-ADAAA EEOC regulations state:

The term substantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable

12

training, skill and abilities.  The inability to perform a single,
particular job does not constitute a substantial limitation in the major
life activity of working.

29 C.F.R. § 1630.2(j)(3)(i) (2008).  The EEOC regulations also list the factors to

be considered in determining whether an individual's impairment is substantially

limiting, including: "(i) [t]he nature and severity of the impairment; (ii) [t]he

duration or expected duration of the impairment; and (iii) [t]he permanent or long

term impact, or the expected permanent or long term impact of or resulting from

the impairment."  29 C.F.R. § 1630.2(j)(2) (2008).  We have held that a plaintiff

who performs "moderately below average" in a life activity is not disabled under

the ADA.  *See Rossbach*, 371 F.3d at 1358–59.

In *Rossbach*, the plaintiffs suffered from a variety of impairments, including

significant knee injuries, and one plaintiff suffered from a herniated disc and high

blood pressure.  *Id.* at 1357–58.  The plaintiffs alleged that they were limited in the

major life activities of walking, sitting, standing, and sleeping, and that they could

not perform those activities for extended periods of time.  *Id.* at 1358–59.

However, the plaintiffs did not provide evidence that the described afflictions

were any worse than those suffered by many adults, and we held that the district

court did not err in finding that the plaintiffs were not substantially limited in the

activities of walking, sitting, standing, and sleeping.  *Id.* at 1359.

13

A plaintiff may prove that she is a disabled person because the defendant regarded her as being disabled if she

> (1) has an impairment that does not substantially limit a major life activity, but is treated by an employer as though it does; (2) has an impairment that limits a major life activity only because of others' attitudes towards the impairment; or (3) has no impairment whatsoever, but is treated by an employer as having a disability as recognized by the ADA.

*Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1327 n.2 (11th Cir. 1998) (citing 29 C.F.R. § 1630.2(l)).  To prevail under this theory, a plaintiff must show that the perceived disability involved a major life activity, and that the perceived disability is substantially limiting and significant.  *Sutton v. Lader*, 185 F.3d 1203, 1208 (11th Cir. 1999).  Because "substantially limiting" requires the plaintiff to allege that she is unable to work in a broad class of jobs, a plaintiff alleging that she was regarded as disabled would need to allege that her disability was regarded as preventing her from performing a broad class of jobs.  *See* 29 C.F.R. § 1630.2(j)(3)(i) (2008).  "The mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate that the employer regarded the employee as disabled," and "[a]n employee who is perceived by her employer as having only a temporary incapacity to perform the essential functions of the job is not perceived as 'disabled.'"  *Sutton*, 185 F.3d at 1209.  "A temporary inability to

14

work while recuperating from surgery is not such a permanent or long-term impairment and does not constitute evidence of a disability covered by the [Rehab] Act." *Id.*

As to the third element needed to establish a prima facie case, a qualified individual is unlawfully discriminated against if the employer does not make reasonable accommodations for the disability, unless such an accommodation would impose an undue hardship on the employer. 42 U.S.C. § 12112(b)(5)(A) (2008). An accommodation is "reasonable," and, thus, required by the ADA, only if it enables the employee to perform the essential functions of the job. *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255 (11th Cir. 2001). The plaintiff bears the burden of identifying a reasonable accommodation that would allow a qualified individual to perform the job, and an employer is not required to accommodate an employee in any manner in which the employee desires. *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285–86 (11th Cir. 1997). The regulations governing the ADA provide that, to determine the appropriate reasonable accommodation, it may be necessary for an employer "to initiate an informal, interactive process with the qualified individual with a disability in need of an accommodation" to identify the person's limitations and possible accommodations. 29 C.F.R. § 1630.2(o)(3) (2007). In *Stewart*, we held

15

that there could be no liability under the ADA where the employer did not obstruct the informal interactive process, made reasonable efforts to communicate with the employee and to provide accommodations based on the information it possessed, and where the employee's actions caused the breakdown in the interactive process. *Stewart*, 117 F.3d at 1287. Moreover, the employee failed to engage in the interactive process because she did not give the employer any substantive reasons as to why the proffered accommodations were unreasonable, but instead, simply demanded that the employer grant her demands. *Id.* at 1286–87.

We have not addressed the availability of a claim for a hostile work environment under either the ADA or the Rehab Act. Where a plaintiff presents a claim based on harassment by a supervisor, she must establish that: (1) she belongs to a protected group; (2) she has been subjected to unwelcome harassment; (3) the harassment was based on a protected characteristic; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and, thus, creates a discriminatorily abusive work environment; and (5) the employer is responsible for that environment under a theory of either direct or vicarious liability. *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999) (en banc) (involving Title VII). With regard to whether the harassment is severe or pervasive, we have held that several instances of racially derogatory

16

slurs, extending over a period of more than two years, were too sporadic and isolated to establish that the employers' conduct was so objectively severe or pervasive as to alter the terms and conditions of the plaintiff's employment. *McCann v. Tillman*, 526 F.3d 1370, 1378–79 (11th Cir. 2008). Alternatively, we have held that 15 incidents of sexual harassment in four months were not infrequent, and were sufficiently severe or pervasive to constitute sexual harassment. *Johnson v. Booker T. Washington Broad. Serv., Inc.*, 234 F.3d 501, 509 (11th Cir. 2000).

Section 12203(a) of Title 42 of the U.S. Code states: "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a) (2008). We assess ADA retaliation claims under the same framework used for Title VII retaliation claims. *Stewart*, 117 F.3d at 1287. To establish a prima facie case of retaliation, "a plaintiff must show (1) a statutorily protected expression; (2) adverse employment action; and (3) a causal link between the protected expression and the adverse action." *Id.* We have recognized that "[a] decision maker cannot have been motivated to retaliate by something unknown to him." *Brungart v. BellSouth*

17

*Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000). The general rule is that close temporal proximity between the protected activity and the adverse employment action is sufficient circumstantial evidence to create a genuine issue of fact as to causation, except that temporal proximity alone is insufficient to create a genuine issue of fact as to causation where it is unrebutted that the decision maker did not have knowledge that the employee engaged in protected activity. *Id.*

Once a prima facie case of retaliation is established, the burden then shifts to the employer to present legitimate, non-discriminatory reasons for its actions. *Stewart*, 117 F.3d at 1287. If the employer offers legitimate reasons for its action, the plaintiff must then demonstrate that the proffered explanation is a pretext for retaliation. *Id.* We have refused to address a plaintiff's retaliation claims based on an employer's refusal to accommodate her where the described acts "relate directly to her 'reasonable accommodation' discrimination claim, not her retaliation claim." *Id.* at 1288. As discussed above, a plaintiff cannot prove that a reason is a pretext for discrimination unless she shows both that the reason was false, and that discrimination was the real reason. *Hicks*, 509 U.S. at 515, 113 S. Ct. at 2752. A plaintiff must meet the proffered reason "head on and rebut it." *Chapman*, 229 F.3d at 1030.

18

The pursuit and receipt of SSDI benefits does not automatically estop the recipient from pursuing an ADA claim. *Cleveland*, 526 U.S. at 797, 119 S. Ct. at 1600. However, an ADA plaintiff may not ignore her SSDI contention that she was too disabled to work, but "must explain why that SSDI contention is consistent with her ADA claim that she could perform the essential functions of her previous job, at least with reasonable accommodation." *Id.* at 798, 119 S. Ct. at 1600 (internal quotation marks omitted). Where the plaintiff merely applied for but was not awarded SSDI benefits, any inconsistency in the theory of the claims is "of the sort normally tolerated by our legal system." *Id.* at 805, 129 S. Ct. at 1603.

As an initial matter, Gilliard does not argue on appeal that the magistrate judge erred in finding that her ADA and Rehab Act claims for monetary relief against GDC and the individual defendants in their official capacities were barred by the Eleventh Amendment, and, thus, she has abandoned those claims and only her claims for prospective injunctive relief under the ADA and Rehab Act remain. Because the Social Security Administration determined that Gilliard was not disabled within the meaning of the Social Security Act, to the extent that she seeks prospective relief, she is not estopped from pursuing her ADA and Rehab Act claims.

19

With regard to whether Gilliard established a prima facie case of disability discrimination, she did not present more than a scintilla of evidence establishing that her physical or mental conditions were severe, long-term, or permanent. Moreover, she did not provide evidence indicating that her difficulties walking, sitting, standing, concentrating, and thinking were any worse than similar afflictions suffered by many adults. To the contrary, she stated in her deposition that her conditions did not affect her ability to perform her job. Further, Gilliard was not regarded as substantially limited in a broad range of jobs, nor as having a permanent disability, and, thus, she was not "regarded as" disabled by the defendants. Accordingly, Gilliard was not "disabled" within the meaning of the ADA, and she cannot establish a prima facie case with regard to her disparate treatment or failure-to-accommodate claims. Similarly, assuming her claims of hostile work environment are cognizable under the ADA and Rehab Act, she could not establish that she was a member of a protected class.

Even assuming that Gilliard established a prima facie case with regard to her disparate-treatment claim, the defendants proffered legitimate, nondiscriminatory reasons for her reassignment or demotion, and she failed to establish that the reasons were false, or that the true reason was discrimination. With regard to her failure-to-accommodate claims, Gilliard did not include her

20

request to wear sneakers in her amended complaint, and the magistrate properly did not consider that claim. Gilliard did not establish that her requested accommodations of an office and a parking space were "reasonable" within the meaning of the ADA. With regard to her request for a four-day workweek, the defendants engaged in the interactive process and made reasonable efforts to communicate with Gilliard and to provide accommodations based on the available information. Gilliard caused a breakdown in that process where she failed to provide any medical documentation outlining her work limitations or any substantive reason explaining why the proposed alternative accommodation was unreasonable.

With regard to Gilliard's hostile-work-environment claim, even assuming it is cognizable and that she was a member of a protected group due to her alleged disability, the alleged harassment by Smith lasted for only one week in her nearly 11-month employment with GDC, and, thus, was not sufficiently severe or pervasive as to alter the terms and conditions of her employment. To the extent that Gilliard argues that the incident in which she was allegedly locked in Smith's office also establishes a claim of hostile work environment, even assuming that the incident constitutes actionable harassment, we conclude it was not based on a protected characteristic, and she could not establish the third element of her claim.

21

Finally, with regard to Gilliard's retaliation claims, even assuming that the MOC or her reassignment or demotion constituted adverse employment actions, there could be no causal connection between those actions and statutorily protected activity because those acts occurred before she filed an EEOC charge. With regard to the requirement that she sign in and out, and with regard to her termination, even assuming that she could establish a prima facie case of retaliation, she did not demonstrate that the defendants' proffered reasons were not the "real" reasons for those employment actions or that the real reason was discriminatory animus against her. Accordingly, we conclude that the magistrate judge correctly found that the defendants were entitled to summary judgment as to Gilliard's ADA and Rehab Act claims.

## III.

Finally, Gilliard argues that Smith and Shepherd violated her right to confidentiality under the ADA, FMLA, and Rehab Act, by failing to maintain Gilliard's medical information separately and leaving the files unattended on a receptionist's desk. Gilliard argues that Schweiger, East, and Poitevint allowed ten people to have access to Gilliard's medical information. Additionally, the individual defendants intentionally failed to specify what medical information they required, which caused Gilliard to disclose her entire medical record.

22

As discussed above, we review a decision to grant summary judgment *de novo*, summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law, and a mere scintilla of evidence is insufficient to establish that a reasonable jury could find in the non-moving party's favor. *Vessels*, 408 F.3d at 767; *Brooks*, 446 F.3d at 1162. The ADA restricts an employer's ability to make medical examinations or inquiries that relate to an applicant's disability status. 42 U.S.C. § 12112(d) (2008). Pursuant to § 12112(d)(4)(A) of the ADA,

> [a] covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity.

42 U.S.C. § 12112(d)(4)(A).

In *Watson v. City of Miami Beach*, 177 F.3d 932, 934 (11th Cir. 1999), the appellant, a police officer, exhibited behavior issues on the job, and after an incident at a hospital where he refused to undergo a department-wide tuberculosis test, which required disclosing his HIV status, the department put Watson on unpaid leave and required that he submit to a fitness-for-duty evaluation. We held that "[i]n any case where a police department reasonably perceives an officer to be even mildly paranoid, hostile, or oppositional, a fitness-for-duty examination is

23

job related and consistent with business necessity." *Id.* at 935.  Based mainly on the nature of Watson's employment as an armed police officer, and his history of apparent overreaction and paranoia, we concluded that no rational jury could find that the City acted improperly by requiring him to undergo a fitness-for-duty evaluation.  *Id.*

We have not yet addressed whether a plaintiff must be disabled to bring a cause of action pursuant to § 12112(d)(4).  *Id.* (declining to address the issue because "the fitness for duty and tuberculosis examinations were job-related and consistent with business necessity").  We have, however, held that in the context of a medical inquiry made before an employer extended a job offer to an individual, a plaintiff "has a private right of action under 42 U.S.C. § 12112(d)(2), irrespective of his disability status," but that an employee who does not have a disability must also show damages caused by the ADA violation.  *Harrison v. Benchmark Elec. Huntsville, Inc.*, 593 F.3d 1206, 1214, 1216–17 (11th Cir. 2010).

Information obtained through a permissible medical inquiry regarding the medical condition or history of an employee must be collected and maintained on separate forms and in separate medical files. 42 U.S.C. § 12112(d)(3)(B), (4)(C) (2008).  Supervisors and managers may be informed regarding necessary restrictions on the work or duties of the employee and necessary accommodations.

24

42 U.S.C. § 12112(d)(3)(B)(i), (d)(4)(C) (2008).  However, when an employee voluntarily discloses information to the employer, rather than providing it to the employer in response to a permissible inquiry or examination, the employee cannot establish an unlawful disclosure under the ADA.  *Cash*, 231 F.3d at 1307–08.

Because Gilliard failed to provide more than a scintilla of evidence to support her allegations that the defendants breached the confidentiality of her medical records or made overly broad requests that caused her to release her entire medical record, we conclude that the magistrate judge correctly found that the defendants were entitled to summary judgment as to her confidentiality claims.

## IV.

For the aforementioned reasons, we affirm the magistrate judge's grant of summary judgment in favor of the defendants.

**AFFIRMED.**

BARKETT, Circuit Judge, concurs in the result.