[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
June 7, 2004
THOMAS K. KAHN
CLERK

_____

No. 03-13348

_____

D. C. Docket No. 00-00994-CV-JEM

STEVE ROSSBACH,
RAUL CAIRO,
ERNESTO R. SAM,
LAWSON SUTTON,
FRANCISCO J. GORORDO,

Plaintiffs-Appellants,

versus

CITY OF MIAMI,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(June 7, 2004)

Before ANDERSON, CARNES and FAY, Circuit Judges.

PER CURIAM:

Steve Rossbach, Raul Cairo, Ernesto Sam, Lawson Sutton and Francisco Gorordo, police officers for the City of Miami (herein collectively referred to as "the Officers" or "Plaintiffs"), appeal the district court's granting of the City's motion for judgment as a matter of law after a jury awarded the Officers a total of $160,000 for damages resulting from discrimination at the hands of the City. The Officers brought this action under the Americans with Disabilities Act ("ADA" or "the Act"), claiming that the City's policy precluding light and limited duty officers from engaging in off-duty jobs discriminated against them based on their disabilities. Because we find that Plaintiffs did not offer any evidence to show that their impairments substantially limited any major life activity, we affirm the district court's holding that Plaintiffs, though classified as "disabled" by the City itself, failed to prove they were disabled under the ADA. AFFIRMED.

I.

Rossbach and four fellow City of Miami Police Officers brought this action alleging employment discrimination in violation of the ADA. Each officer applied for off-duty employment within the police department, and each was denied based on a policy prohibiting light or limited duty officers from working any off-duty

2

assignments.[1]  The case proceeded to trial and, at the end of the Officers' case, the

City moved for a directed verdict under Rule 50 of the Federal Rules of Civil

Procedure.  The district court reserved ruling on the motion and the City renewed it

after all evidence was received.  The jury returned a verdict for the Officers.

After the verdict was handed down, the district court heard oral argument on

the City's Rule 50 motion.  In its written order reversing the jury's verdict, the

court found that the Officers failed to introduce sufficient evidence to show that

they were disabled under the ADA.  Specifically, the court held that Officer

Rossbach failed to demonstrate that his physical impairments substantially limited

any major life activity.[2]  Recognizing that Rossbach's impairments perhaps caused

discomfort and inconvenience with respect to sleeping, standing and sitting, the

court determined that there was simply no evidence that these major life activities

were "substantially limited," as that term is understood under the ADA.

## II.

We review the district court's granting of the City's motion for judgment as a

matter of law *de novo*, considering only the evidence that may properly be

---

[1]It is the City's policy that officers working off-duty assignments must be "combat-ready" for the safety of the officers and of the general public.

[2]The district court determined that, because Rossbach's alleged limitations on major life activities mirrored those of the other officers, an analysis of Rossbach's claims properly addressed all of the officers' claims.

considered and the reasonable inferences drawn from it in the light most favorable to the nonmoving party. *Slicker v. Jackson*, 215 F.3d 1225, 1229 (11th Cir. 2000). Where "no legally sufficient evidentiary basis exists for a reasonable jury to find for that party on that issue," judgment as a matter of law is proper. Moore's Federal Practice, § 59.50[5], 3d Ed., Vol. 12 (1998).

## III.

The Officers first contend that they introduced ample evidence for the jury to properly conclude each was disabled under the ADA.[3] A *prima facie* case of employment discrimination under the ADA is established by demonstrating that Plaintiffs: (1) have a disability; (2) are qualified, with or without reasonable accommodations; and (3) were unlawfully discriminated against because of their disability. 42 U.S.C. § 12112 (a). As discussed above, the district court found that the Officers failed to satisfy the first element of the test. The ADA defines "disability" to include: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of

---

[3]The officers also challenge the district court's failure to address each of their conditions individually. We find no error in this regard. Although Rossbach's impairments resulted from different forces than the other officers and, indeed, he suffered different injuries than the others, all plaintiffs complained of essentially the same limitations – difficulties with respect to walking, sitting, standing, sleeping and working. The officers do complain of other restrictions on daily life; however, the only activities important to the ADA analysis here are "major life activities," and the only major life activities implicated by the officers are those listed. More importantly, as will be addressed in further detail below, the manner in which each officer claimed that these major life activities were limited is also strikingly similar.

4

such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2).

Disability under the first definition above, according to the Supreme Court, involves a three-step analysis. *Bragdon v. Abbott*, 524 U.S. 624 (1998). First, plaintiffs must be impaired. Next, the court must identify the life activity that the plaintiff claims has been limited and determine whether it is a major life activity under the ADA. The regulations interpreting the Rehabilitation Act of 1973 define major life activities as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 45 C.F.R. § 84.3(j)(2)(ii).[4] If not contained within these exemplars, the activity must be "significant" to everyday life. *Bragdon*, 524 U.S. at 638. Several courts, for example, have found that sleeping constitutes a major life activity. *See Pack v.*

---

[4]In construing the various terms of this definition of disability, there are two potential sources for guidance – the regulations interpreting the Rehabilitation Act and the EEOC regulations interpreting the ADA at 29 C.F.R. § 1630.2. *Toyota Motor Mfg. v. Williams*, 534 U.S. 184, 193, 122 S. Ct. 681, 689 (2002). Because Congress drew the ADA's definition of disability almost verbatim from the definition of "handicapped individual" in the Rehabilitation Act, the Supreme Court has stated that it is proper to construe that term in accordance with pre-existing regulatory interpretations under the Rehabilitation Act. *Id*. at 193-94, 122 S. Ct. at 689. The Supreme Court has noted that the "persuasive authority of the EEOC regulations is less clear" because Congress gave no agency "authority to issue regulations interpreting the term 'disability' in the ADA." *Id*. at 94, 122 S.Ct. at 689. Nevertheless, the Supreme Court has previously construed the ADA in light of the EEOC regulations without deciding what deference is due the regulations, id., and this Court also frequently looks to the EEOC regulations for interpretive guidance regarding Subsection A of the ADA. *See e.g.*, *Hilburn v. Murata Electron. N. Am.*, 181 F.3d 1220, 1226 (11th Cir. 1999); *Gordon v. E.L. Hamm & Assocs., Inc.*, 100 F.3d 907, 911 (11th Cir. 1996).

*Kmart Corp.*, 166 F.3d 1300, 1305 (10th Cir. 1999). Finally, the court must determine whether the impairment "substantially limits" that life activity. The EEOC defines this phrase to mean "significantly restricted as to the condition, manner or duration under which the average person in the general population can perform the same major life activity." 29 C.F.R. § 1630.2(j)(1).

The first step of the analysis is undisputedly satisfied here. Each officer testified to significant impairments that, more often than not, resulted from injuries sustained in performing the physically-demanding job of a combat-ready police officer. Among other things, Rossbach severely injured his arm in a car door while trying to apprehend a suspect, suffered a herniated disc and nerve damage in his back after being involved in a near head-on collision while on duty, and re-injured his neck when an escalator in the courthouse stopped working. Cairo severely injured, and re-injured, his right knee on numerous occasions while trying to apprehend a suspect and, later, by being hit by a police car. Gorordo also injured his right knee while on dignitary detail and suffered severe neck and back injuries while practicing control techniques with an overly-aggressive corrections officer. Sam, too, tore ligaments in his knee during a charity football game and later re-injured the same knee in a car accident, in which he also suffered a concussion and injured his back. Finally, Sutton tore the meniscus in his knee in an on-duty

accident and later suffered two herniated discs and high blood pressure. All were, at one time or another, classified as light or limited duty police officers by the City and were placed in a variety of administrative-type jobs within the department.[5]

Proceeding to the second step, the district court sorted through the variety of activities that the Officers claimed were hindered by their impairments, and properly focused on the major life activities of walking, sitting, standing and sleeping.[6] The court rejected the Officers' contention that these particular life activities were substantially limited by their impairments. We agree. Though our Court has not squarely addressed this issue, other courts have consistently held that someone who walks, sits, stands or sleeps "moderately below average" is not disabled under the Act. *See*, *e.g.*, *Kelly v. Drexel Univ.*, 94 F.3d 102, 107 (3d Cir. 1996); *Harmon v. Sprint United Mgt. Corp.*, 264 F. Supp.2d 964 (D. Kan. 2003); 29 C.F.R. app. § 1630.2(j). Particularly relevant to our analysis is a Second Circuit decision remarkably similar to ours, in which that court reversed the jury's verdict and found that three light duty police officers failed to prove they were disabled under the ADA. *Colwell v. Suffolk County Police Dept.*, 158 F.3d 635 (2d Cir.

---

[5]All but Officer Sam are currently on light or limited duty status.

[6]Rossbach, for example, complained that his impairments prevented him from weight lifting, playing in the park with his family and participating in sport activities. The court correctly ruled that these were not major life activities. The Officers also alleged that their impairments limited their major life activity of working and fault the district court for not addressing this contention in its order. We will address this issue more fully below.

1998).

In *Colwell*, the court chastised plaintiff for engaging in "hedging and a studied vagueness" when describing his limitations:

> For example, Colwell has difficulty standing "at attention" for "any period of time" or standing "in one spot." This difficulty is overcome, however, if he is able "to move around a lot." Colwell cannot sit "too long," and "prolonged" sitting is a problem at work. As far as lifting is concerned, Colwell can lift "light objects," but not "very heavy objects." At work, Colwell's difficulty standing "in one particular area" for "more than an hour at a time" causes him difficulty when he lectures recruits (which is part of his job). In order to avoid this problem, Colwell has to "move around." Similarly as to sleep, Colwell failed to show that his limitation should be deemed substantial. Essentially Colwell's evidence on this point was that he takes a medication as a sleep aid and that "I usually get a tough night's sleep." Difficulty sleeping is extremely widespread. Colwell made no showing that his affliction is any worse than is suffered by a large portion of the nation's adult population.

*Id*. at 644; *see also*, *Chanda v. Engelhard*, 234 F.3d 1219, 1222 (11th Cir. 2000) ("substantially limits" meant that "a diminished activity tolerance for normal daily activities such as lifting, running and performing manual tasks, as well as lifting restriction, did not constitute a disability under the ADA."); *Hilburn*, 181 F.3d at 1228 ("diminished activity tolerance" is not the same as substantial limitation).

8

We are faced with equivalent allegations here. Each of the Officers claims that his impairment prevents him from standing, sitting, walking or sleeping for "extended periods of time." For example, Rossbach alleges that he cannot sit or stand "for long periods," and testified that he "does not go a single night and have a solid night's sleep." Cairo also cannot walk or sit for "long periods of time" and, according to his testimony, "cannot sleep normally." In fact, each of the Officers' testimony – as in *Colwell* – was couched in vague terms and unaccompanied by any evidence that the described afflictions were any worse than is suffered by many adults. Accordingly, we hold that as to the activities of walking, sitting, standing and sleeping, the district court did not err in determining that the officers were not substantially limited.

Absent from the district court's order, however, is any discussion as to whether the Officers' impairments affected their major life activity of working as police officers, or whether the City regarded them as being disabled. This is a surprising omission, particularly in light of the fact that the City itself explicitly classified Plaintiffs as light or limited duty officers *because* of their "disabilities."[7]

---

[7]Section 3.4.17.1 of the City's written policy reads in part:

> Limited Duty is defined as sedentary duty status for personnel who have reached maximum medical improvement and are still disabled to the extent that they can not perform all the duties of a police officer.

9

If the jury could have reasonably concluded that the Officers were prevented from working by their impairments, or at least that the City perceived them as being substantially limited in this regard, then the jury's verdict must be affirmed. Because we believe these issues overlap significantly, we will address them together.

IV.

The Officers argue either that they were substantially limited in the major life activity of working, or otherwise were regarded as such by the City. Essential to either claim, according the EEOC regulations, is a showing that each plaintiff was "significantly restricted in the ability to perform either a *class of jobs or a broad range of jobs* in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2 (j)(3)(i) (emphasis added). Our Court shares the same interpretation. *Carruthers v. BSA Advertising*, 357 F.3d 1213, 1216 (11th Cir. 2004) (adopting the language of the EEOC regulations). The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working. *Id*. Thus, an impairment must preclude – or at least be perceived to preclude – an individual from more than one type of job, even if the job foreclosed is the individual's job of choice. *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 492 (1999).

10

The Officers generally assert that their impairments substantially limited them from performing their jobs as combat-ready police officers. Their argument focuses more closely, however, on their contention that the City perceived them as being disabled. This is strongly bolstered, they believe, by the uncontested fact that their duties were relegated to exclusively administrative tasks, coupled with evidence that the City's policy explicitly labeled limited duty officers as "disabled."

A plaintiff is "regarded as" being disabled if he meets one of three conditions: (1) he has a physical impairment that does not substantially limit major life activities but is treated by an employer as constituting such a limitation; (2) has a physical or mental impairment that substantially limits major life activities only as a result of the attitude of an employer toward such impairment; or (3) has no physical or mental impairment but is treated by an employer as having such an impairment. 29 C.F.R. 1614.203(a)(5). Our Court has held that, for a plaintiff to prevail under this theory, he must show two things: (1) that the perceived disability involves a major life activity; and (2) that the perceived disability is "substantially limiting" and significant. *Sutton v. Lader*, 185 F.3d 1203, 1209 (11th Cir. 1999).

The City submits that this Court's decision in *Carruthers* leans in its favor.

11

We disagree. There we focused on the fact that plaintiff failed to prove that her employer had anything more than a general awareness of her initial diagnosis. *Carruthers*, 357 F.3d at 1217. The only other evidence plaintiff offered was testimony that, after her diagnosis, her employer threatened to terminate her if she could not maintain a full-time schedule, and then placed an advertisement for her replacement. *Id*. These facts alone failed to prove that her employer regarded her as disabled. In contrast, here there is no question that the City knew of the Officers' impairments - as each was on light or limited duty, a title which is specifically reserved for those officers that are "disabled."

The City also directs our attention to *Gordon v. E.L. Hamm & Assocs.*, in which this Court rejected plaintiff's "regarded as" claim because he failed to show that, after being diagnosed with cancer, his employer perceived that he could not do the work assignments he performed before. 100 F.3d 907 (11th Cir. 1996). Significantly, following plaintiff's diagnosis with cancer, he continued to perform the same or similar work (maintenance work on military housing) that he had previously performed at the original job site. *Id*. at 913. Moreover, plaintiff's reassignment after returning from chemotherapy treatment resulted simply from being absent during a busy season - a situation which required his employer to assign time-sensitive work to another employee. *Id*. Unlike in *Gordon*, the

12

Officers here were not merely reassigned to different, but similar, work assignments. Testimony from former Police Chief Donald Warshaw made it clear that light duty officers were those not "combat-ready," and therefore limited to administrative duties. The City's policy and practice certainly suggest that the City regarded them as being substantially limited as to working as police officers in general.

Assuming, then, that the Officers were precluded by their impairments from working as police officers, or alternatively that the City perceived them as being so precluded, the only question remaining is whether "police officer" is a "class of jobs" or "broad range of jobs" for ADA purposes. If so, then the Officers were indeed disabled under the ADA, and we should reinstate the jury's verdict. Neither party directs us to definitive authority on this issue. The Supreme Court has only spoken in generalities thus far:

> To be substantially limited in the major life activity of working, then, one must be precluded from more than one type of job, a specialized job, or a particular job of choice. If jobs utilizing an individual's skills (but perhaps not his or her unique talents) are available, one is not precluded from a substantial class of jobs. Similarly, if a host of different types of jobs are available, one is not precluded from a broad range of jobs.

*Sutton v. United Airlines, Inc.*, 527 U.S. 471, 119 S.Ct. 2139, 2151, 144 L.Ed.2d 450 (1999).

13

This Court's analysis of this issue has, for the most part, been relegated to cases where the plaintiff proved he or she was regarded as being substantially limited only with respect to fairly narrow tasks within a particular job – that is, situations which clearly failed to satisfy the "broad range of jobs" test. *See*, *e.g.*, *Cash v. Smith*, 231 F.3d 1301, 1306-07 (11th Cir. 2000) (employee failed to show that employer regarded her as substantially limited in major life activity of working, based on evidence that employer prohibited her from driving a company vehicle once it became aware of extent of her medical problems); *Swain v. Hillsborough County School Bd.*, 146 F.3d 855, 857-58 (11th Cir. 1998) (vague assertion that plaintiff unable to perform any job that precludes her from having regular access to a restroom not "broad range of jobs" under ADA). One decision seems particularly relevant to the case at hand, however. In *Witter v. Delta Air Lines Inc.*, we found that piloting airplanes is too narrow a range of jobs to constitute a "class of jobs" as that term is defined in the EEOC regulations. 138 F.3d 1366, 1369-70 (11th Cir. 1998).

Likewise, other circuits directly addressing this issue with respect to police officers have consistently found that "police officer" is *not* a broad range or class of jobs. For example, in *Epps v. City of Pine Lawn*, 353 F.3d 588, 590 (8th Cir. 2003), plaintiff police officer injured his neck and back in an auto accident while

14

on duty. The City concluded that he no longer could perform "the particular job of police officer" and fired him because it had no light duty positions available with the force. *Id*. Plaintiff argued that the City perceived him as disabled because his termination suggested that the City believed he was substantially limited in performing the major life activity of working as a police officer. *Id*. at 591. Affirming the district court's grant of summary judgment in the City's favor, the court found the evidence insufficient to establish an ADA "regarded as" claim, reasoning that the inability to perform a "single, particular job [police officer] does not constitute a substantial limitation on the major life activity of working." *Id*. at 592. Similarly, in *Sheehan v. City of Gloucester*, 321 F.3d 21, 25-26 (1st Cir. 2003), the First Circuit held:

> [A]lthough the record clearly sets forth the City's belief that Sheehan was incapable of working as a Gloucester police officer due to his hypertension and risk of heart attack, this evidence is not sufficient for Sheehan to be considered disabled …under the 'regarded as' prong of the ADA … [because Sheehan failed to show] that the City regarded his hypertension as rendering him unable to perform a broad range of jobs.

The Second and Fourth Circuit courts made identical findings in *Foore v. City of Richmond*, 6 Fed.Appx. 148, 154 (4th Cir. 2001) ("the position of police officer is simply too narrow of a field to be considered a 'class of jobs' [under the ADA]."), and *Colwell*, 158 F.3d at 647. The Second Circuit initially made this

15

finding in a case brought under the Rehabilitation Act. *Daley v. Koch*, 829 F.2d 212, 215 (2d Cir. 1989) (holding that the particular position of police officer is not a class of jobs). Similarly, the Fifth Circuit reached the same conclusion in the context of a firefighter. *Bridge v. City of Bossier*, 92 F.3d 329, 334 (5th Cir. 1996) (citing *Daley* and concluding that a limitation preventing one from becoming a firefighter affected only a narrow range of jobs).

We are persuaded by these decisions, and hold that "police officer" is too narrow a range of jobs to constitute a "class of jobs" as that term is defined in the EEOC regulations. We believe this ruling is dictated by our Court's earlier decision in *Witter* that piloting airplanes is not a broad range of jobs in the context of ADA litigation. *Witter*, 138 F.3d at 1369-70. Accordingly, we affirm the district court's finding that Rossbach and his fellow officers failed to show that each was disabled under the ADA.[8]

---

[8]After oral argument was heard in this matter, counsel for the Officers submitted supplemental authority when this panel questioned whether a plaintiff could ever be disabled in the major life activity of working if he was employed in a re-employment job with the same employer. In the opinion cited by the Officers, this Court did indeed reverse a district court's judgment as a matter of law on this very issue, finding that the fact alone that plaintiffs were re-employed by defendant in positions tailored to their limitations did not establish that they could not show that they were disabled. *Mullins v. Crowell*, 228 F.3d 1305, 1315 (11th Cir. 2000). But that panel went on to conclude that a genuine issue of material fact as to whether jobs utilizing plaintiffs' skills were available in the relevant geographical areas precluded a finding that plaintiffs were substantially limited in the major life activity of working. *Id.* The Officers simply do not take a comparable position here. Their contention is that the City regarded them as being substantially limited not as to working in general, but only with respect to working *as police officers*. The Officers do not contend, nor does the record reflect, that they were precluded from performing (or the City viewed them as precluded from performing) a broad

V.

For the reasons set forth above, we affirm the district court's granting of

judgment as a matter of law in favor of the City.

AFFIRMED.

---

range of jobs.  The Officers position is that "police officer" *is* a broad range or class of jobs.  Our decision is not based on the fact that the Officers continued to work within the police department.  Rather, the Officers' argument fails, as described in great detail above, because the job of "police officer" is not a "class of jobs" under the ADA.