[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-10476
Non-Argument Calendar
_____

D.C. Docket No. 5:16-cv-00402-MTT

NICOLA HUDSON,

Plaintiff-Appellant,

versus

TYSON FARMS, INC.,

Defendant-Appellee,

OLIVIA MCCLELLAN,

Defendant.

_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

(April 29, 2019)

Before WILSON, JORDAN, and BRANCH, Circuit Judges.

PER CURIAM:

Nicola Hudson, a *pro se* plaintiff, appeals the district court's grant of defendant Tyson Farms, Inc.'s ("Tyson") motion for summary judgment as to her complaint alleging that Tyson discriminated against her in violation of the Americans With Disabilities Act of 1990 ("ADA"), as amended, 42 U.S.C. § 12112(a).  Hudson contends that the district court erred in determining that (1) her back injury and asthma were not disabilities under the ADA, and (2) Tyson did not fail to reasonably accommodate those disabilities.[1]  We affirm.

## I.    FACTUAL BACKGROUND

Hudson began working for Tyson as a tray packer in August 2015.  Hudson's post-job offer health assessment showed that Hudson identified asthma and back problems on her health assessment, but checked the box "No" when asked "Do you have any work restrictions?"  Prior to her Tyson employment, Hudson had been employed as a Certified Nursing Assistant ("CNA") at numerous skilled nursing facilities.

Within her first week on the job, however, she complained of back pain to her line leader.  A day or two later, she was sent to the nurse's station to discuss her back complaints.  The nurse on duty sent her home, and gave her a Job Placement Physical

---

[1] Hudson originally listed a Tyson employee, Olivia McClellan, as an individual defendant as well, but the district court later dismissed McClellan.  Because Hudson does not challenge that ruling on appeal, any issue in that respect is abandoned.  *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1322 (11th Cir. 2001).

2

Recommendations form to be filled out by her personal doctor.  Hudson did not mention her asthma to the nurse.

Tyson had mats and stands spread out throughout the plant, available for employees to use.  Hudson could alleviate her back pain by placing a floor mat on the concrete floor to stand on, and was able to use a mat and stand during all of her shifts except for part of one shift on September 9, 2015, when she was unable to find any available.  She requested Tyson assign her a specific mat and stand, but Tyson declined to do so because there were not enough mats and stands for every employee.

Hudson testified that she saw her personal doctor, Dr. Oliver, on September 11, 2015.  He imposed restrictions limiting the amount of time she could stand, and required her to sit for 15 minutes for every hour of standing.  After she returned to work that evening with Dr. Oliver's restrictions, Tyson told her that it would be unable to accommodate those restrictions.

She then went to see another doctor, Dr. Inhulsen, and requested that he remove Dr. Oliver's restrictions and recommend instead that she use two floor mats and a stand.  She also requested an inhaler from Dr. Inhulsen.[2]  Dr. Inhulsen's examination of Hudson determined that her back was "normal" with "full range of motion, no costovertebral angle tenderness, no kyphosis, no scoliosis, [and] normal

---

[2] She previously received medication for her asthma, but had not previously required an inhaler.

3

exam of spine." He released her to work with no restrictions. Dr. Inhulsen's notes also state that Hudson requested that Dr. Inhulsen recommend she use two floor mats and a stand while at work.

Hudson returned to work on September 15 with Dr. Inhulsen's note, which stated that she could return to work without any restrictions and recommended that she use a stand and two floor mats. This time, Tyson said she could return to work, and that she could use floor mats and a stand, which were available to employees throughout the facility. Because Tyson had insufficient mats, however, it was still unable to assign Hudson a specific mat and stand.

Later that same day, Hudson asked her line leader if she could leave her station to use her inhaler, stating that the ammonia in the plant was aggravating her asthma. The line leader instructed her to wait until her lunch break, which was in approximately 10 minutes. She finished her shift, but did not come back to work the next day. On September 17, she called Tyson and told them she would not be returning.

After leaving Tyson, Hudson returned to her work as a CNA.

On September 6, 2016, Hudson filed the present suit against Tyson, alleging that Tyson violated her rights under the ADA by failing to accommodate her disabilities. Specifically, in her *pro se* complaint, she alleged that she was forced to

4

resign in September 2015 after Tyson was unable to accommodate her back injury and asthma.

Tyson, in turn, answered, denying liability and asserting certain defenses. Following discovery, Tyson moved for summary judgment. The district court granted Tyson's motion, which Hudson timely appealed.

## II.    STANDARD OF REVIEW

We review a district court's entry of summary judgment *de novo*. *Hallmark Developers, Inc. v. Fulton Cty., Ga.*, 466 F.3d 1276, 1283 (11th Cir. 2006). However, we will not consider issues raised for the first time on appeal which were not raised in the district court. *Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004).

A court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether there is a genuine dispute of material fact, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Although *pro se* pleadings are liberally construed, a *pro se* litigant is still required to establish that there is a genuine issue of material fact in order to avert summary judgment. *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).

5

## III.    ADA LEGAL STANDARDS

The ADA prohibits discrimination against a qualified individual on the basis of disability.  42 U.S.C. § 12112(a).  The ADA also imposes upon employers an affirmative duty to provide reasonable accommodations for known disabilities, unless doing so would result in undue hardship on the operation of the business. 42 U.S.C. § 12112(b)(5)(A).

The burden-shifting analysis applicable to Title VII also applies to ADA claims of intentional disability discrimination.  *Hilburn v. Murata Elec. N. Am., Inc.*, 181 F.3d 1220, 1226 (11th Cir. 1999).  "To establish a *prima facie* case of discrimination under the ADA, a plaintiff must show: (1) [she] is disabled; (2) [she] is a qualified individual; and (3) [she] was subjected to unlawful discrimination because of her disability.  *Holly v. Clairson Indus., LLC*, 492 F.3d 1247, 1255–56 (11th Cir. 2007).  A plaintiff can show she is disabled by proving she has "a physical or mental impairment that substantially limits one or more [of her] major life activities."  42 U.S.C. § 12102(1).  In order to determine if Hudson is disabled, this Court applies a three-step approach: (1) "we consider whether [the alleged disability] was a physical impairment";[3] (2) "we identify the life activity

---

[3] A physical impairment is "[a]ny physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems, such as neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin, and endocrine." 29 C.F.R. § 1630.2(h).

6

upon which [the plaintiff] relies . . . and determine whether it constitutes a major life activity";[4] and (3) "we ask whether the impairment substantially limited the major life activity." *Bragdon v. Abbott*, 524 U.S. 624, 631 (1998). *See also Rossbach v. City of Miami*, 371 F.3d 1354, 1357 (11th Cir. 2004).

## IV.    WHETHER HUDSON'S BACK INJURY AND ASTHMA ARE DISABILITIES UNDER THE ADA

We consider Hudson's back injury and asthma claims in turn and find that, as to both claims, Hudson failed to prove that she was disabled. *Hilburn*, 181 F.3d at 1226.[5]

### a.  Back Injury

Regarding her back injury, we first consider whether Hudson identified a physical impairment. *Bragdon*, 524 U.S. at 631. While Dr. Oliver recommended work restrictions, he provided no medical diagnosis of back pain or its cause. More telling is Dr. Inhulsen's superseding examination of Hudson, which determined that her back was "normal" with a "full range of motion." Dr. Inhulsen, at Hudson's

---

[4] "Major life activities include, but are not limited to: [c]aring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, sitting, reaching, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, interacting with others, and working." 29 C.F.R. § 1630.2(i)(1)(i).

[5] The ADA also imposes upon employers an affirmative duty to provide reasonable accommodations for known disabilities, unless doing so would result in undue hardship on the operation of the business. 42 U.S.C. § 12112(b)(5)(A). Hudson does not challenge, or appeal, the district court's conclusions that she has no past record of a disabling impairment, nor did Tyson regard her as having such an impairment. Additionally, Hudson does not challenge the district court's dismissal of her "constructive discharge" claim. Accordingly, any issues in these respects are abandoned. *Wilkerson*, 270 F.3d at 1322.

request, removed Dr. Oliver's work restrictions and returned Hudson to work with no back injury-related restrictions in place.

Hudson's only evidence lies in her own subjective complaints of back pain and related limitations. Nevertheless, Hudson did testify in her deposition to a few ways in which her back limited her. Taking that testimony, and her subjective complaints of pain, in a light most favorable to her, we acknowledge that she may have demonstrated the existence of a physical impairment by testifying to a "physiological disorder or condition . . . affecting [her] . . . musculoskeletal" system. 29 C.F.R. § 1630.2(h).

"A physical impairment, standing alone, however, is not necessarily a disability as contemplated by the ADA." *Gordon v. E.L. Hamm & Assocs., Inc.*, 100 F.3d 907, 911 (11th Cir. 1996). We thus turn to the other *Bragdon* considerations to determine whether Hudson has identified a major life activity and "whether the impairment substantially limited the major life activity." *Bragdon*, 524 U.S. at 631.

Here, the major life activity identified by Hudson is working.[6] Working is a major life activity,[7] so we must consider whether Hudson's back injury substantially limited her from working. A plaintiff claiming that she is substantially limited in the major life activity of working must establish that her condition significantly restricts her ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities. *Rossbach*, 371 F.3d at 1359.  An impairment does not substantially limit the ability to work merely because it prevents a person from performing either a particular specialized job or a narrow range of jobs.  *Id.*  When making the "substantially limits" determination, we consider the manner in which the individual is limited in the activity as compared to the general population, and may consider the difficulty, effort, or time required to perform a major life activity as well as the length of time for which the individual can perform the activity and the pain experienced.  *Mullins v. Crowell*, 228 F.3d 1305, 1314 (11th Cir. 2000).

---

[6] The district court also considered Hudson's allegations that her back injury substantially limits her ability to sleep, bend, play with her son, and run, and found that "from the evidence, a reasonable jury could not find that Hudson's back pain substantially limits her in these activities in comparison to the abilities of an average person.  Hudson does not challenge the district court's decision on these grounds and, because we affirm on "major life activity of working" grounds, *Rossbach*, 371 F.3d at 1359, we need not consider these allegations. *Evans v. Georgia Reg'l Hosp.*, 850 F.3d 1248, 1253 (11th Cir.) ("[W]e may affirm on any ground supported by the record, regardless of whether that ground was relied on or considered below.").

[7] **"**[M]ajor life activities include, but are not limited to . . . working." 42 U.S.C.A. § 12102(2).

9

Here, the record demonstrates that, even if Hudson's back pain is considered an impairment, it does not substantially limit her ability to work. Hudson has held a variety of jobs since she was first injured in 2010 and returned to a job as a certified nursing assistant after she left employment with Tyson. Likewise, Hudson testified in her deposition that normal day-to-day bending did not typically bother her, and she presented no evidence of any difficulty walking. *See Rossbach*, 371 F.3d at 1357; *Mullins*, 228 F.3d at 1314. Tellingly, Hudson also returned to her work at Tyson with no restrictions after Dr. Inhulsen concluded that her back was "normal" with a "full range of motion."  Finally, the record suggests only that Hudson was unable to work at Tyson due to her inability to stand on concrete for long periods of time without moving around. However, this does not prove that her "condition significantly restricts her ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities." *Rossbach*, 371 F.3d at 1359.  Hudson cannot claim that she was substantially limited in the major life area of working.

Overall, Hudson has failed to prove that her back injury is a disability under the ADA.  *Hilburn*, 181 F.3d at 1226.

### b. Asthma

Likewise, Hudson's asthma claim fails for the same reasons that her back injury claim fails. The only evidence supporting this claim is Hudson's own

10

testimony that the ammonia at the Tyson plant aggravated her asthma. But, again, Hudson failed to specify any major life activity that her asthma affects.[8] *Bragdon*, 524 U.S. at 631. Nor has she provided any evidence that her asthma "substantially limited" a major life activity. *Id*. Thus, Hudson has failed to prove that her asthma qualifies as a disability under the ADA.

## V.    REASONABLE ACCOMMODATIONS

Discrimination under the ADA also includes the failure to make a reasonable accommodation to the known physical or mental limitations of the individual. 42 U.S.C. § 12112(b)(5)(A). An employer's failure to provide reasonable accommodation to a disabled individual is itself discrimination, and the plaintiff does not bear the additional burden of showing that the employer intentionally acted in a discriminatory manner toward its disabled employees. *Holly*, 492 F.3d at 1262.

The plaintiff bears the burden both to identify an accommodation and to show that it is reasonable. *Willis v. Conopco, Inc*., 108 F.3d 282, 284–86 (11th Cir. 1997). "The term 'reasonable accommodation' may include . . . acquisition or modification of equipment or devices . . . and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9)(B).

---

[8] Hudson may not now claim that her asthma substantially limited her ability to breathe, as she never raised the claim before the district court.

11

### a. Back Injury

As a threshold matter, Hudson's failure to identify any work restrictions on the health assessment she completed after receiving a work offer from Tyson is significant. *See, e.g.,* U.S. Equal Emp. Opportunity Comm'n, *EEOC Enforcement Guidance on Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act* (Oct. 17, 2002) ("If the individual with a disability states that s/he does not need a reasonable accommodation, the employer will have fulfilled its obligation."). While she identified prior back issues, she did *not* identify them as creating the need for a work restriction, so Tyson was unaware that a reasonable accommodation would be required. Hudson was nevertheless allowed to use the mats and stands available throughout the facility. Thus, when Hudson first requested that a specific mat and stand be assigned to her and Tyson refused, that refusal was reasonable given that Hudson did not have a known disability and had not identified a work restriction that required an assigned mat and stand.[9]

After meeting with Drs. Oliver and Inhulsen, Hudson again requested an assigned mat and stand, which Tyson again refused because there were not enough for every employee. This refusal was reasonable because, although Dr. Oliver identified work restrictions, those restrictions were removed by Dr. Inhulsen. And,

---

[9] It was also generally unnecessary, given that Hudson testified she was only unable to locate a mat and stand for part of one shift—a situation that occurred prior to her accommodation request.

while Dr. Inhulsen recommended the use of a mat and stand, his evaluation did not conclude that Hudson could not work without a mat or stand.[10]  It is well-settled that, where an employee has requested an accommodation, the employer "is not required to accommodate an employee in any manner in which that employee desires." *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir. 1997).  The employer is only required to offer reasonable accommodations based on the circumstances. *Id.*

Moreover, Tyson still allowed her to use a mat and stand, which were readily available throughout the facility. The only "refusal" on Tyson's part was a refusal to *guarantee* Hudson a specific mat and stand. Under the circumstances, this refusal was reasonable, as Hudson's doctor had returned her to work with no restrictions and there were not enough mats and stands to assign one to Hudson. *See Gaston*, 167 F.3d at 1363–64 (affirming summary judgment in favor of employer because the record indicated that the plaintiff did not refuse a reasonable request for accommodation). Thus, even if we considered Hudson's back injury to be a disability, her claim would still fail because the evidence shows that Tyson did not fail to provide reasonable accommodation for Hudson's back injury.

---

[10] Hudson's argument that Tyson unreasonably refused to restructure her job or work schedule or reassign her to a vacant position fails because it was not raised in the district court. *See Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) ("This Court will not consider issues raised for the first time on appeal that were not raised in the district court below.").  In any event, Hudson has failed to show that she requested this accommodation.  *Gaston*, 167 F.3d at 1363–64; *Access Now, Inc.*, 385 F.3d at 1331.

### b. Asthma

The duty to provide a reasonable accommodation is not triggered under the ADA unless a specific demand for an accommodation has been made by the employee. *Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361, 1363–64 (11th Cir. 1999). "Only after the employee has satisfied this burden and the employer fails to provide that accommodation can the employee prevail on a claim that her employer has discriminated against her." *Id.* at 1364. Under *Stewart*, an employer is not liable where it did "not obstruct an informal interactive process; ma[de] "reasonable efforts to communicate with the employee and to provide accommodations based on the information it possesse[d]; and *where the employee's actions caused the breakdown in the interactive process*." 117 F.3d at 1287 (emphasis added).

As for her asthma claim, we cannot say that Hudson made a specific accommodation request for her asthma. Hudson only asked her line leader, on her last day on the job, if she could take a break to use an inhaler. The request was denied for only a short period of time, and she did not pursue the matter any further once the line leader denied her request. *Gaston*, 167 F.3d at 1363-64. Hudson's request was just "the first step in an informal, interactive process between the individual and the employer." U.S. Equal Emp. Opportunity Comm'n, *EEOC Enforcement Guidance on Reasonable Accommodation and Undue Hardship*

14

*Under the Americans with Disabilities Act* (Oct. 17, 2002).[11]  After Hudson requested a break to use her inhaler, she completed that day's work, but never returned to work at Tyson. Even if we determined that this one request to a line leader was a sufficient request for an accommodation under the ADA, Hudson caused a breakdown in the interactive process by abruptly quitting the next day—before Tyson had a chance to adequately respond.

Thus, even if we considered Hudson's asthma to be an ADA disability, her asthma ADA claim fails because she never identified an accommodation or an unreasonable failure to accommodate on the part of Tyson.

Lastly, although Hudson views her situation as a constructive discharge and argues that Tyson forced her to leave, it is undisputed that Hudson quit after one inhaler request to her line supervisor.  Hudson deprived Tyson of the opportunity to engage in the interactive accommodations process.[12] The evidence does not support Hudson's allegations that Tyson denied her request and thereby constructively discharged her employment. Hudson's departure unilaterally

---

[11] "The employer and the individual with a disability should engage in an informal process to clarify what the individual needs and identify the appropriate reasonable accommodation.  The employer may ask the individual relevant questions that will enable it to make an informed decision about the request. This includes asking what type of reasonable accommodation is needed.  The exact nature of the dialogue will vary."  U.S. Equal Emp. Opportunity Comm'n, *EEOC Enforcement Guidance on Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act* (Oct. 17, 2002). Under this Court's precedent, "[l]iability simply cannot arise under the ADA when . . . the employee's actions cause a breakdown in the interactive process." *Stewart*, 117 F.3d at 1287.

[12] That process may have required her to provide medical evidence of her asthma so Tyson could determine if her medical condition met the ADA definition of "disability."

terminated any attempts at an interactive ADA-accommodations process with Tyson. Based on the facts provided, we cannot conclude that Hudson was constructively discharged.

## VI.    CONCLUSION

In sum, Hudson has failed to demonstrate that she has a disability under the ADA because neither her alleged back injury nor her asthma meets the requirements of an ADA disability. Furthermore, Hudson has not provided evidence that Tyson unreasonably refused to accommodate either of her alleged disabilities. The district court correctly granted summary judgment in this case. Accordingly, we affirm.

**AFFIRMED.**