[DO NOT PUBLISH]


IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-15241
Non-Argument Calendar
_____

D.C. Docket No. 5:16-cv-00080-LGW-BWC


YVES SANTAIS,

Plaintiff-Appellant,

versus


CORRECTIONS CORPORATION OF AMERICA, et al.,

Defendants,

OFFICER JONES,
Guard, Coffee Correctional Facility,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

(October 27, 2020)

Before GRANT, LUCK, and ED CARNES, Circuit Judges.

PER CURIAM:

Yves Santais, a Georgia prisoner, brought suit against a corrections officer for excessive force under 42 U.S.C. § 1983 and asserted various state law claims. Santais appeals the judgment based on the jury's verdict in favor of the officer, challenging an evidentiary ruling and the sufficiency of the evidence.

I.

Santais is incarcerated at Coffee Correctional Facility. He filed a pro se lawsuit against Captain Malcolm Jones, individually and in his official capacity, alleging excessive force under 42 U.S.C. § 1983 and asserting state law claims of battery, false imprisonment, and intentional infliction of emotional distress. Santais alleged that on April 7, 2016 Jones, who was monitoring the prison cafeteria, discharged his pepper spray into the room and locked Santais and 25 other inmates inside. Santais asserts that he sought medical attention for throat and chest pain and because he was coughing up blood. The day after the pepper spray incident, he filed a grievance with the prison's warden and asked him to review the security camera recordings from the cafeteria. The warden "denied" the grievance.[1]

---

[1] Santais also sued the warden, the prison, and the corporation that owns the prison. The district court dismissed all claims against those defendants, and Santais does not challenge that

At trial, Santais testified that he was in the prison cafeteria on the day of the incident and Jones was located three or four tables away from him. He saw Jones take a pepper spray bottle from Officer Kasonya Johnson, open the bottle, and discharge the spray in the "cafeteria hall." Santais testified that he immediately began having stomach and throat pain and coughing up blood. He filed a grievance with the warden and asked him to look at the security camera footage from the cafeteria; in response he was told that Jones had not used any pepper spray. Santais did not testify that he was locked in the cafeteria during this incident.

After Santais rested his case, Captain Jones testified that on the day of the incident he asked an inmate, David Hicks, to exit the cafeteria because his 15-minute dining period was up. Because Hicks repeatedly refused to do so, Jones called in security backup. Hicks walked out of the cafeteria into a hallway and Jones followed him. They walked seven to ten feet away from the cafeteria door. By that time two other officers, Johnson and Christopher Anguiano, had arrived. Hicks threw his food tray at the wall and one of those other officers sprayed Hicks

---

ruling on appeal. See Timson v. Sampson, 518 F.3d 870, 874 (11th Cir. 2008) ("[I]ssues not briefed on appeal by a pro se litigant are deemed abandoned.").

with the pepper spray.[2]  No other inmates were in the hallway, and the inmates in the cafeteria could not have seen or heard what was going on in the hallway.

On cross-examination Santais questioned Jones about the security cameras in the cafeteria.  Before trial, Santais had moved the court to order Jones to produce the security camera footage from the cafeteria, and the court had denied that motion after defense counsel advised the court that the footage did not exist. But Jones testified at trial that there were at least four security cameras in the cafeteria and recordings were usually saved for 45 days.  Jones was aware that Santais had filed a grievance after the incident, but he testified several times that he had no control over or access to the security recordings, and he testified twice that he didn't know why the recording had not been preserved.  Santais then, for the third time, asked Jones why the recordings had not been preserved, this time stating that, "Georgia policy, the [Standard Operating Procedures] say you're supposed to keep all of the camera evidence . . . after the incident of a use of force, so if that's the case why aren't they conserved?"  Jones objected and asserted that because the prison was private it was not part of the Georgia Department of

---

[2] Jones' testimony was not clear about which officer used the pepper spray on Hicks, or if both of them did.  On direct examination he testified that Anguiano took charge and "before [Anguiano] sprayed [Hicks], he told him to take the tray back."  On cross-examination, Santais asked Jones if Johnson had used her spray, and he replied, "Yes, [] Johnson did spray."  But Jones was clear that he himself did not discharge the pepper spray.

Corrections or subject to its policies.  The court sustained the objection without specifying a ground.

Officer Kasonya Johnson testified that she and Jones were in the hallway near the cafeteria when inmate Hicks was pepper sprayed, and that neither Santais nor any inmate other than Hicks was in the hallway.  Johnson also testified that when Hicks was sprayed in the hallway outside of the cafeteria, no other inmates were present, and the inmates inside the cafeteria could not have been affected by the spray because the door to that room was closed and locked, which was required when an incident like this was occurring in the hallway.  Finally, she testified that Jones did not discharge any pepper spray during the incident.  The defense then rested.

The court conducted a charge conference and considered Santais' request for a jury instruction on spoliation of evidence.  The court ruled that the evidence did not support giving the instruction because Jones did not have access to the security camera recordings.  The jury returned a verdict in favor of Jones on all claims.

## II.

Santais raises two issues on appeal.  First, he challenges the district court's ruling prohibiting him from further questioning Jones about the preservation of the security camera recordings, specifically about whether the Georgia Department of Corrections' policies required it.  In fact, the district court entered no such ruling.

5

Instead of preventing any further questions about the recordings, it sustained the objection to his third question to Jones, who had already testified twice that he had no control or access to the recordings. That is the only ruling about the recordings that is before us.

"We review a district court's ruling on the admissibility of evidence for abuse of discretion, and evidentiary rulings will be overturned only if the moving party establishes that the ruling resulted in a substantial prejudicial effect." Piamba Cortes v. American Airlines, Inc., 177 F.3d 1272, 1305 (11th Cir. 1999) (quotation marks omitted).

The key point is that Jones had already testified that he had no control over or access to the security camera recordings and that he did not know why they had not been preserved. Santais put forth no evidence at trial to contradict or otherwise call into question that testimony. There was no evidence that Jones had any personal knowledge of the Georgia Department of Corrections' video preservation policy or whether it was followed in this case. See Fed. R. Evid. 602. The court did not abuse its discretion when it sustained the objection to the third question asking essentially the same thing he had already asked.

Second, Santais challenges the sufficiency of the evidence supporting the verdict. He contends that a reasonable jury would have found that Jones used excessive force in violation of § 1983 and committed battery, false imprisonment,

and intentional infliction of emotional distress.   Santais contends that the fact that the jury did not enter a verdict in his favor shows that it "was not attentive."

We ordinarily review <u>de novo</u> the sufficiency of the evidence to support a verdict at a civil trial, inquiring whether, viewing the facts in the light most favorable to the prevailing party, "no legally sufficient evidentiary basis exists for a reasonable jury to find for that party on that issue." <u>Rossbach v. City of Miami</u>, 371 F.3d 1354, 1356 (11th Cir. 2004) (quotation marks omitted).  But we have no authority to consider a challenge to the sufficiency of the evidence unless the requirements of Federal Rule of Civil Procedure 50(b) are satisfied in the district court.  <u>See</u> <u>Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.</u>, 546 U.S. 394, 400–01, 407, 126 S. Ct. at 985, 989 (2006); <u>Hi Ltd. P'ship v. Winghouse of Fla., Inc.</u>, 451 F.3d 1300, 1301–02 (11th Cir. 2006) (explaining that appellate review of the sufficiency of the evidence is barred where a party moves before the verdict for judgment as a matter of law under Rule 50(a), but fails to file a Rule 50(b) or Rule 59(b) motion after the verdict).[3]

Although we construe <u>pro se</u> filings liberally, "procedural rules in ordinary civil litigation should [not] be interpreted so as to excuse mistakes by those who

---

[3] Rule 50(a) permits a party to move for judgment as a matter of law before a verdict has been returned.  A party may then renew its motion for judgment as a matter of law under Rule 50(b) after the jury has returned its verdict.  Rule 59(b) permits a party to move for a new trial within 28 days after entry of the judgment.

proceed without counsel." <u>McNeil v. United States</u>, 508 U.S. 106, 113, 113 S. Ct. 1980 (1993).  Because Santais failed to make a motion in the district court under Rule 50(a) and (b), we will not consider his challenge to the jury's verdict.[4]

**AFFIRMED.**

---

[4] Santais also argues that Jones unfairly prejudiced him at trial by referring to his felony conviction for false imprisonment, for which he was serving a sentence.  He raised that argument for the first time in his reply brief, and as a result it is waived.  <u>See</u> <u>Egidi v. Mukamai</u>, 571 F.3d 1156, 1163 (11th Cir. 2009) ("Arguments not properly presented in a party's initial brief or raised for the first time in a reply brief are deemed waived.").  In any event, contrary to Santais' contention, he was the party who first raised the fact of his felony conviction when he referred to it in his opening statement. And, of course, the jury almost certainly was not surprised to learn that an inmate in a prison was there because he had been convicted of committing a crime.